### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| Daniel Matthew McGuigan,<br><br>              Plaintiff,<br><br>v.<br><br>County of San Bernardino et al.,<br><br>              Defendants. | EDCV 14-2483-VAP (SPx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On February 1, 2016, Defendants County of San Bernardino, Charles Nichols, Christopher Mulligan, and Paul Schaefer ("Defendants") filed their Motion for Summary Judgment ("Motion").  (Doc. 25.)  Plaintiff Daniel Matthew McGuigan ("Plaintiff") opposed the Motion on February 23, 2016 (Doc. 38), and Defendants replied[1] on March 2, 2016 (Doc. 42).

After consideration of the papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the Motions hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.  BACKGROUND

On October 23, 2013, Deputy Nichols arrived at Plaintiff's residence to serve an arrest warrant for Erik Ford.  (See Declaration of Daniel McGuigan ("McGuigan Declaration") (Doc. 34) ¶¶ 8, 18.)  Plaintiff stated he did not know Ford, and that no one by that name had ever visited him at his home.  (Complaint (Doc. 1) ¶ 25.)  Deputy Nichols asked Plaintiff for his identification, but Plaintiff refused, stating he

---

[1] On February 10, 2016, the Court ordered Defendants to file their Reply, if any, by February 29, 2016.  (Doc. 31.)  Defendants filed their Reply on March 2, 2016 -- two days after the Court's February 29 deadline.  The Court nonetheless considers it for purposes of the Motion.

was uncomfortable giving the Deputy his personal information.  (<u>Id.</u> ¶¶ 26-27.)
Deputy Nichols also asked whether he could search Plaintiff's house, and Plaintiff
again refused.  (<u>Id.</u> ¶ 28.)

Deputy Nichols arrested Plaintiff for allegedly impeding his service of the
arrest warrant.  (<u>Id.</u> ¶¶ 30-32.)  Plaintiff claims Deputy Nichols seated him in the
back of a patrol car, while officers on the scene searched his residence.  (<u>Id.</u> ¶¶ 36,
41.)  Plaintiff further alleges he suffered great pain from the handcuffs Deputy
Nichols used to restrain him.  (<u>Id.</u> ¶¶ 39.)  After confirming Plaintiff's identification,
Deputy Nichols released Plaintiff with a citation for violating California Penal Code
Section 148.  (<u>Id.</u> ¶ 43.)

Finally, Plaintiff claims Defendants Nichols, Schaefer, and Mulligan
knowingly made false statements to the San Bernardino County District Attorney's
Office.  (<u>Id.</u> ¶¶ 69-89.)  The Office charged Plaintiff with a misdemeanor violation of
Section 148 but dismissed it later for lack of evidence.  (<u>Id.</u> ¶¶ 72-73.)

Based on these events, Plaintiff asserts eight claims against Defendants[2]
pursuant to 42 U.S.C. Section 1983: (1) unlawful seizure in violation of the Fourth
Amendment (<u>Id.</u> ¶¶ 20-50); (2) excessive force in violation of the Fourth
Amendment (<u>Id.</u> ¶¶ 51-61); (3) unlawful search in violation of the Fourth
Amendment (<u>Id.</u> ¶¶ 62-68); (4) malicious prosecution in violation of the First and
Fifth Amendments (<u>Id.</u> ¶¶ 69-78); (5) withholding exculpatory evidence in
furtherance of Plaintiff's malicious prosecution[3] in violation of the Fifth, Sixth, and
Fourteenth Amendments (<u>Id.</u> ¶¶ 79-89); (6) failing to train officers adequately (<u>Id.</u>
¶¶ 90-95); (7) employing unlawful policies that deprived Plaintiff of his
constitutional rights (<u>Id.</u> ¶¶ 96-101); and (8) employing a policy approving unlawful
searches in violation of the Fourth Amendment (<u>Id.</u> ¶¶ 102-104).

---

[2] Plaintiff asserts his fourth and fifth claims only against Defendants Nichols,
Schaefer, and Mulligan, his seventh claim only against Defendant County of San
Bernardino ("Defendant County"), and the rest of his claims against all
Defendants.

[3] The Court refers to Plaintiff's fourth and fifth claims as his "malicious
prosecution" claims.

## II.   EVIDENTIARY RULINGS

Before setting forth the uncontroverted facts, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion for Summary Judgment.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  At this stage, however, a district court should "focus on the admissibility of the [evidence's] contents," "not . . . on the admissibility of [its] form."  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001).  Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment.  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

In their Reply, Defendants assert various evidentiary objections to Plaintiff's Declaration and his Exhibits.  (Reply at 10-11.)  They claim many of Plaintiff's statements lack foundation and are irrelevant (Id. at 10), and that his Exhibits have not been authenticated (Id. at 11).  Without more, all of these objections are mere "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence."  See Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013).  "On this basis alone, the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact."  Id.  Accordingly, the Court OVERRULES these Objections.[4]

---

[4] The Court, however, notes a troubling inconsistency with Exhibit 5 -- the transcript of Defendant Nichols's belt recording.  (Doc. 36.)  The parties in this case agree Deputy Nichols spoke with Sergeant Schaefer after he arrested Plaintiff (Declaration of Charles Nichols ("Nichols Declaration") (Doc. 25) ¶ 6), and that Plaintiff also spoke with the Sergeant after his release (Id. ¶ 8; McGuigan Declaration ¶ 43).  The transcript indicates Deputy Nichols and Plaintiff spoke with Sergeant Mulligan, not Sergeant Schaefer.  (See Exhibits 5-25, 5-43.)  The Court thus declines to consider the transcript for purposes of this Motion.

### III.  LEGAL STANDARD

A motion for summary judgment or summary adjudication shall be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Celotex, 477 U.S. at 325.  Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  Id.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Co., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything."  Id. at 1103.

If the moving party carries its burden of production, however, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256; Nissan Fire, 210 F.3d at 1103.  The non-moving party must make an affirmative showing on all matters in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.

See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## IV.   FACTS

To the extent certain facts or conclusions are not mentioned in this Order, the Court has not relied on them in reaching its decision.  In addition to considering the evidentiary objections raised by the parties, the Court has independently considered the admissibility of the evidence that both parties submitted and has not considered facts that are irrelevant or based upon inadmissible evidence.

### A.   Uncontroverted Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of this Motion.  See L.R. 56-3.

On October 23, 2013, Deputy Nichols was on patrol in the City of Rancho Cucamonga in full uniform and a marked police vehicle.  (Nichols Declaration ¶ 2.)  At about 7:30 p.m., he attempted to serve a felony arrest warrant for robbery, burglary, and assault with a deadly weapon.  (Id.)  The warrant identified Erik Ford as the subject and described him as a "white male adult, five feet eight inches [tall], 180 pounds with blond[] hair and green eyes."  (Id.; Arrest Warrant (Exhibit 2-2) (Doc. 36).)  The warrant also listed Ford's address as 8411 Hawthorne Street, Rancho Cucamonga, CA 91730.  (Arrest Warrant (Exhibit 2-2).)

Deputy Nichols went to the residence at 8411 Hawthorne Street, where he found a white male adult, later identified as Plaintiff. (Nichols Declaration ¶ 3; McGuigan Declaration ¶ 8.) Before speaking with Deputy Nichols, Plaintiff stepped out of his house, onto the porch, and closed the door behind him. (Nichols Declaration ¶ 3; McGuigan Declaration ¶ 9.) Deputy Nichols explained he was serving an arrest warrant for a subject identified as Erik Ford and "that the warrant listed [Plaintiff's] residence as the suspect's residence." (Nichols Declaration ¶ 3.) Plaintiff responded he did not know the suspect. (Nichols Declaration ¶ 3; McGuigan Declaration ¶ 18.)

Deputy Nichols asked Plaintiff for his identification and also asked to search Plaintiff's house -- Plaintiff refused both requests. (Nichols Declaration ¶ 3; McGuigan Declaration ¶ 22.) Deputy Nichols explained Plaintiff had "an obligation to identify himself because [Deputy Nichols] had contacted him for a lawful reason." (Nichols Declaration ¶ 4.) Plaintiff failed to provide Deputy Nichols with his identification, at which point Deputy Nichols stated "[Plaintiff] could not leave or end the contact because he had not yet identified himself." (Id.)

Deputy Nichols arrested Plaintiff for "impeding [his] investigation" and placed Plaintiff in the rear passenger compartment of his patrol car. (Nichols Declaration ¶ 4; McGuigan Declaration ¶ 30.) After some time, Plaintiff provided Deputy Nichols with his name and date of birth, and during their conversation, Deputy Nichols indicated he knew Plaintiff's daughter. (Nichols Declaration ¶ 5; McGuigan Declaration ¶¶ 35-36.) Deputy Nichols did not release Plaintiff because he had not yet confirmed Plaintiff's identity. (McGuigan Declaration ¶ 5.)

Deputy Nichols stepped away from Plaintiff and Plaintiff's vehicle, and called Sergeant Schaefer. (Id. ¶ 6.) He explained he had arrested Plaintiff due to Plaintiff's "refusal to cooperate in [Deputy Nichols's] execution of the warrant." (Id.) Sergeant Schaefer "left the decision . . . to [Deputy Nichols] as to whether to take [Plaintiff] to jail, issue a citation and release him[,] or to . . . release him" without consequence. (Id.)

While speaking with Sergeant Schaefer, Deputy Nichols determined he could verify Plaintiff's identity using the Cal Photo system. (Id. ¶ 7.) Deputy Nichols

confirmed Plaintiff's identity and released Plaintiff from custody with a citation for violating Section 148.  (Id.; McGuigan Declaration ¶ 42.)

Sergeant Schaefer arrived on the scene before Plaintiff's release.  (McGuigan Declaration ¶ 43; Nichols Declaration ¶ 8.)  Sergeant Mulligan[5] "was not at the scene, and his only involvement was [in] reviewing [Deputy Nichols's] report of . . . the arrest."  (Nichols Declaration ¶ 11.)  Plaintiff asked Sergeant Schaefer whether the Sergeant believed Officer Nichols's actions were lawful, and Sergeant Schaefer replied the arrest was proper.  (See McGuigan Declaration ¶ 44; Deposition of Paul Schaefer ("Schaefer Deposition") (Exhibit 7-4) (Doc. 36) 16:6-9.)

## B.    Disputed Facts

The parties dispute (1) whether Deputy Nichols arrived at the correct address (Compare Nichols Declaration ¶ 2 with McGuigan Declaration ¶ 1 n.1); (2) when during the conversation Deputy Nichols revealed he was serving an arrest warrant (Compare Nichols Declaration ¶ 3 with McGuigan Declaration ¶ 18); (3) whether Deputy Nichols ever told him he believed Plaintiff to be the suspect named in the arrest warrant (Compare Nichols Declaration ¶ 3 with McGuigan Declaration ¶ 19); (4) whether on the day in question Plaintiff exhibited similar physical characteristics as the suspect (Compare Nichols Declaration ¶ 3 with McGuigan Declaration ¶¶ 3-6); (5) whether Plaintiff refused to provide his identification immediately before his arrest or whether he asked to speak with Deputy Nichols's supervisor (Compare Nichols Declaration ¶ 4 with McGuigan Declaration ¶ 24); (6) how long Plaintiff was seated in the patrol vehicle before he identified himself to Deputy Nichols (Compare Nichols Declaration ¶ 5 with McGuigan Declaration ¶¶ 33-35); and (7) whether officers searched Plaintiff's residence (Compare Nichols Declaration ¶ 9 with McGuigan Declaration ¶¶ 38-39).

---

[5] Defendant Mulligan identifies himself as a "sergeant with the Sherriff's Department."  (Deposition of Charles Mulligan (Exhibit 8-5) (Doc. 36) 16:20-25.) The Court will thus refer to him as a sergeant throughout this Order.

# V.    DISCUSSION

Defendants Nichols, Schaefer, and Mulligan seek summary judgment based on qualified immunity.  (Motion at 2.)  Defendants Schaefer and Mulligan further claim they are not liable as supervisors for Deputy Nichols's actions.  (Id. at 15.)  Finally, Defendant County contends there is no evidence it employed unlawful policies and that it is not liable for the actions of its officers under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  (Id. at 17-19.)  The Court addresses each contention, in turn, below.

## A.    Qualified Immunity

To determine whether officials are entitled to qualified immunity, courts conduct a two-part analysis: (1) "Was the law governing the official's conduct clearly established?," and (2) "Under that law, could a reasonable official have believed the conduct was lawful?"  Rogers v. Cty. of San Joaquin, 487 F.3d 1288, 1296-97 (9th Cir. 2007).  "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct."  Romero v. Kitsap Cty., 931 F.2d 624, 627 (9th Cir. 1991).  "If [the] plaintiff carries this burden, then the officers must prove . . . their conduct was reasonable even though it might have violated constitutional standards."  Id.

Defendants claim they are entitled to qualified immunity on the following claims: (1) unlawful seizure (Complaint ¶¶ 20-50); (2) excessive force (Id. ¶¶ 51-61); and (3) unreasonable search (Id. ¶¶ 62-68).[6]  (See Motion at 9-10).  The Court will address each claim, in turn, below.

---

[6] At the Motions hearing, Plaintiff's counsel indicated Defendants never raised in their Motion the qualified immunity issue with respect to Plaintiff's claims for malicious prosecution.  Although Defense counsel claimed to have raised the argument, he did not do so until he filed Defendants' Reply.  (See Reply at 9-10.)  "The [C]ourt declines to consider arguments raised for the first time in reply, since the other party has no opportunity to respond."  Hill v. Opus Corp., 464 B.R. 361, 371 n.34 (C.D. Cal. 2011).  Accordingly, the Court DENIES Defendants' qualified immunity defense as it relates to Plaintiff's claims for malicious prosecution.

### 1.    Unlawful Seizure

Section 148 provides that any person who "willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished by a fine not exceeding one thousand dollars . . . , or by imprisonment."  Cal. Penal Code § 148.

Plaintiff claims the "use of Section 148 to arrest a person for refusing to identify [himself] during a lawful <u>Terry</u> stop violates the Fourth Amendment's proscription against unreasonable searches and seizures."  (Opp'n at 10 (quoting <u>Martinelli v. City of Beaumont</u>, 820 F.2d 1491, 1494 (9th Cir. 1987).)  In the alternative, Plaintiff contends his "refusal to identify himself" does not, by itself, violate § 148, where the initial detention "was not justified . . . by reasonable suspicion."  (<u>Id.</u> at 15.)  Finally, Defendant Nichols claims the warrant provides an independent, objective ground for arresting Plaintiff.  (Motion at 14; Reply at 8.)

### a.    Clearly Established Law

To meet the "clearly established" requirement, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  This requires defining the right allegedly violated in a "particularized" sense that is "relevant" to the actual facts alleged.  <u>Id.</u>  "Because the focus is on whether the

---

The Court, however, dismisses Plaintiff's claim for malicious prosecution under the Fifth Amendment.  A court may not dismiss a claim *sua sponte* "unless the plaintiffs cannot possibly win relief."  <u>Sparling v. Hoffman Const. Co., Inc.</u>, 864 F.2d 635, 638 (9th Cir. 1988).  Here, "[i]t is well established that [Plaintiff] cannot advance a Fifth Amendment due process claim against a local government entity or its employees, because the due process and equal protection components of the Fifth Amendment apply only to the federal government."  <u>See</u> <u>Sanchez v. City of Fresno</u>, 914 F. Supp. 2d 1079, 1098 (E.D. Cal. 2012) (citing <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001) ("The plaintiffs do not allege that any of the defendants are federal actors.  Accordingly, we hold that plaintiffs have failed to state a claim alleging a violation of the Fifth Amendment.")).  Plaintiff asserts his Fifth Amendment claim against three county officers -- "local government . . . employees."  <u>See id.</u>  As Plaintiff "cannot possibly win relief" on this claim, the Court dismisses it *sua sponte.*  <u>Sparling</u>, 864 F.2d at 638.

officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

As stated above, Plaintiff asserts violations of two particularized rights, and Defendant Nichols claims the warrant justified Plaintiff's arrest. The Court will address each contention, in turn, below.

### 1.     Refusing to Identify Oneself During a Lawful Terry Stop

The parties dispute whether an officer may use Section 148 to arrest a suspect for refusing to identify himself during a lawful Terry stop. In Martinelli v. City of Beaumont, the Ninth Circuit concluded such an arrest was unconstitutional under the Fourth Amendment because Section 148 "'bootstrap[s] the authority to arrest on less than probable cause.'" 820 F.2d at 1494 (citing Lawson v. Kolender, 658 F.2d 1362, 1366-67 (9th Cir. 1981), aff'd, 461 U.S. 352 (1983)). Seventeen years later, the Supreme Court upheld the arrest of a suspect who refused to identify himself during a lawful Terry stop in violation of Nevada law.  Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty., 542 U.S. 177, 188 (2004).

Plaintiff claims Martinelli "is still binding law in the Ninth Circuit, even in the wake of Hiibel," because Hiibel concerned a Nevada statute requiring a person to identify himself -- California does not have such a statute.  (Opp'n at 10.)  The Supreme Court recognized "the source of the legal obligation [to identify oneself] arises from *Nevada state law*, not the Fourth Amendment," and concluded the law was constitutional.  542 U.S. at 187-88 (emphasis added).

Defendants contend Hiibel undercuts the Ninth Circuit's reasoning in Martinelli that allowing an arrest under Section 148 for refusing to identify oneself would "bootstrap the authority to arrest on less than probable cause."  Martinelli, 820 F.2d at 1494 (citations omitted) (internal quotation marks omitted).  In Hiibel, the plaintiff also claimed Nevada's law "circumvents the probable-cause requirement, in effect allowing an officer to arrest a person for being suspicious." 542 U.S. at 188.  The Supreme Court rejected this argument, instead finding the plaintiff's "concerns [were] met by the requirements that a Terry stop must be

justified at its inception and reasonably related in scope to the circumstances which justified the initial stop." Id. (citations omitted) (internal quotation marks omitted).

The case law in the Ninth Circuit is scant as to whether a person may be arrested for refusing to provide identification during a lawful Terry stop.  The Court has only identified one case recognizing Hiibel abrogates Martinelli.  See Martiszus v. Wash. Cty., 325 F. Supp. 2d 1160, 1168 n.2 (D. Or. 2004) ("The Hiibel decision, however, does undercut Ninth Circuit precedent which supports the proposition that an officer may not seize a citizen for failing to provide identification *even* when the officer otherwise had reasonable suspicion that criminal activity was afoot.") (referring to Carey v. Nevada Gaming Control Bd., 279 F.3d 873, 880 (9th Cir. 2002) (relying on Martinelli, 820 F.2d 1491)).

The Court thus finds the law is not clearly established in the Ninth Circuit as to whether an officer may use Section 148 to arrest a person for refusing to identify himself during a lawful Terry stop.  Although Hiibel concerned a Nevada statute, its reasoning directly undercuts that of the Ninth Circuit in Martinelli.  Given this conflict and the "undeveloped state of the law" with respect to this issue, Wilson v. Lane, 526 U.S. 603, 617 (1999), the Court cannot say Defendant Nichols had "fair notice" that his actions were unconstitutional, Brosseau, 543 U.S. at 198. Accordingly, he is entitled to qualified immunity as to this claim.  See Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) ("If the law did not put the official on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.") (citations omitted) (internal quotation marks omitted).

### 2.    Refusing to Identify Oneself During an Unlawful Terry Stop

The law is clearly established that an officer may not arrest a person he has stopped for failing to provide identification if the stop itself is not based on reasonable suspicion.  In Brown v. Texas, the Supreme Court concluded "an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe . . . the suspect is involved in criminal activity, as is required for a traditional arrest."  443 U.S. 47, 51 (1979).  The officers, however, must have a

"reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Id.

### 3.    Arrest Without Probable Cause

"Unsurprisingly, it is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights." Knox v. Southwest Airlines, 124 F.3d 1103, 1107 (9th Cir. 1997).  When the officers have "probable cause to arrest the true subject of the warrant but mistakenly" arrest another person, "the question is whether the arresting officers had a good faith, reasonable belief that the arrestee was the subject of the warrant." Rivera v. Cty. of Los Angeles, 745 F.3d 384, 389 (9th Cir. 2014).

The Court will next address whether Defendant Nichols's actions were "reasonable" under these constitutional standards.  See Romero, 931 F.2d at 627.

### b.    Reasonable Conduct

Defendant Nichols is not entitled to qualified immunity because he has not met his burden of demonstrating his actions were reasonable in light of clearly established law.  Indeed, the record indicates there are genuine disputes of material fact as to whether he had reasonable suspicion to seize Plaintiff before arresting him. Such factual disputes "preclude a determination as to qualified immunity at the summary judgment stage."  See Green v. City and Cty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014).

### 1.    Seizure

"A seizure occurs when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts the liberty of a person." U.S. v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004) (citations omitted) (internal quotation marks omitted).  "A person's liberty is restrained when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  Id. (citations omitted) (internal quotation marks omitted).

"Mere police questioning," however, "does not constitute a seizure." Muehler v. Mena, 544 U.S. 93, 101 (2005) (citations omitted) (internal quotation marks omitted).  "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage."  Id. (citations omitted) (internal quotation marks omitted).

The Ninth Circuit employs a five-factor test to determine whether an officer has seized a suspect: "(1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's officious or authoritative manner would imply that compliance would be compelled; and (5) whether the officers advised the detainee of his right to terminate the encounter."  Washington, 387 F.3d at 1068 (citations omitted).

Based on these factors, Defendant Nichols seized Plaintiff while questioning him on the porch.  Although Defendant Nichols was the only officer present and had not drawn his weapon, the encounter occurred on private property,[7] Deputy Nichols told Plaintiff "he could not leave or end the contact," (Nichols Declaration ¶ 4), and he did not advise Plaintiff of his right to terminate the encounter.  Rather, he did the opposite by stating Plaintiff "had an *obligation* to identify himself" (Id. ¶ 4 (emphasis added)) and that Plaintiff "would be detained if he tried to end [the] contact"[8]

---

[7] The Supreme Court has stated "when it comes to the Fourth Amendment, the home is first among equals.  Florida v. Jardines, 133 S.Ct. 1409, 1414 (2013).  "At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  Id. (citations omitted) (internal quotation marks omitted).  "This right would be of little practical value if the State's agents could stand in a home's porch . . . and trawl for evidence with impunity."  Id.

[8] Plaintiff claims Defendant Nichols's statement establishes Plaintiff had not been seized *until his arrest*.  (See Opp'n at 13.)  The Court disagrees.  Defendant Nichols seems to have used the terms "detain" and "arrest" synonymously, as he arrested Plaintiff immediately after telling him he "would be detained" if Plaintiff did not present his identification.  (Nichols Police Report (Exhibit 1-2).)  Most importantly, three of the five Washington factors weigh in favor of finding

(Nichols Police Report (Exhibit 1-2) (Doc. 36)).  Accordingly, the Court finds Plaintiff was seized within the meaning of the Fourth Amendment.

### 2.      Reasonable Suspicion

The next question is whether Defendant Nichols had reasonable suspicion to detain Plaintiff.  Under Terry v. Ohio, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." U.S. v. Sokolow, 490 U.S. 1, 7 (1989) (citing 392 U.S. 1, 30 (1968)). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch," and must demonstrate "some minimal level of objective justification for making the stop." Id. (citations omitted) (internal quotation marks omitted).  Courts look to the "totality of the circumstances" to determine "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Loharsingh v. City and Cty. of San Francisco, 696 F. Supp. 2d 1080, 1096-97 (C.D. Cal. 2010) (citations omitted) (internal quotation marks omitted).

"The determination of whether the facts alleged could support a reasonable belief in the existence of . . . reasonable suspicion is . . . a question of law to be determined by the court." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).  If the underlying "facts and circumstances within an officer's knowledge" purporting to support his suspicions are in dispute, a "determination of qualified immunity at summary judgment" is improper, and "the case must proceed to trial." See id.

Here, the material facts purporting to establish reasonable suspicion are in dispute.  Deputy Nichols alleges he detained Plaintiff because he believed Plaintiff was the subject identified in the arrest warrant.  (See Nichols Declaration ¶¶ 3-4.) First, he claims he was at the correct address and was there for a lawful purpose. (Id. ¶ 3.)  Plaintiff claims Defendant Nichols arrived at the wrong address -- the address listed in the warrant is 8411 Hawthorne Street, Rancho Cucamonga, CA

---

Defendant Nichols seized Plaintiff *before his arrest* while questioning him on the porch.

91730 (Arrest Warrant (Exhibit 2-2)), while Plaintiff's address is 8411 Hawthorne Street, Alta Loma, CA 91701 (See McGuigan Declaration ¶ 1 n.1).  Although Alta Loma "is an area within the City of Rancho Cucamonga," the zip code there is 91701, which does not match the 91730 zip code listed in the warrant.  (See id.)  Plaintiff further states "[t]here is a 'Hawthorne Drive' in Rancho Cucamonga in the 91730 zip code . . . , but not with [his] [8411] house number."  (Id.)

Plaintiff claims his physical characteristics are not similar to those of the suspect.  The warrant indicates the suspect had blond hair (Arrest Warrant (Exhibit 2-2)), while Plaintiff claims his hair was black "with very few gray hairs" when Deputy Nichols approached him on October 23, 2013.  (See McGuigan Declaration ¶ 5.)  Defendant Nichols suggests blond hair may appear "gray" in the dark.  (See Nichols Declaration ¶ 3.)  Plaintiff also claims he weighed "approximately 215 [pounds]" on the day in question (McGuigan Declaration ¶ 6), while Defendant Nichols alleges Plaintiff weighed closer to the 180 pounds listed in the warrant (See Nichols Declaration ¶ 3).  Finally, Plaintiff states he is six feet tall (McGuigan Declaration ¶ 3), while the warrant states the suspect was five feet eight inches (Arrest Warrant (Exhibit 2-2)).  Defendant Nichols nonetheless claims Plaintiff and the suspect in the warrant were "similar in . . . height."  (See Nichols Declaration ¶ 3.)

Further, Deputy Nichols asserts he could not identify Plaintiff until Plaintiff provided his name and date of birth.  (See id. ¶ 5.)  Plaintiff claims Deputy Nichols knew who he was even before arresting him, as Deputy Nichols "disclosed to [Plaintiff] on several occasions that he knew [Plaintiff's] daughter."  (See McGuigan Declaration ¶ 36.)

Finally, there are material factual disputes as to whether Plaintiff attempted to end the contact with Deputy Nichols by retreating into his residence.  According to Defendant Nichols, Plaintiff refused to identify himself and stated "he was going . . . into his house."  (Id. ¶ 4.)  Plaintiff claims he did not attempt to end the contact and merely asked to "speak with [Deputy Nichols's] supervisor."  (McGuigan Declaration ¶ 24.)  The dispute is crucial, as Defendant Nichols claims "Plaintiff's desire to end the contact without identifying himself added to [Defendant Nichols's]

suspicion [Plaintiff] was the . . . suspect [described in the warrant]." (Nichols Declaration ¶ 4.)

Based on the totality of circumstances, the Court finds there are material disputes of fact as to whether Deputy Nichols had reasonable suspicion to detain Plaintiff, and thus whether a reasonable officer would have considered his conduct lawful. See Rogers, 487 F.3d at 1296-97. Where, as here, qualified immunity "depends on genuinely disputed issues of material fact, the [C]ourt must submit the fact-related issues to the jury." See Ortega v. O'Connor, 146 F.3d 1149, 1154 (9th Cir. 1998).

### 3.    Reasonable Belief that Arrestee was Subject of the Warrant

Defendant Nichols claims the arrest warrant provides an independent basis -- apart from Section 148 -- to justify Plaintiff's arrest. (Motion at 14; Reply at 8.) The same material disputes that prevent the Court from finding reasonable suspicion as a matter of law also prevent the Court from finding Defendant Nichols acted reasonably in arresting Plaintiff.

Accordingly, Defendant Nichols may not claim qualified immunity as to Plaintiff's unlawful seizure claim.

### 2.    Excessive Force

Defendant Nichols claims Plaintiff "cites [to] no pre-existing clearly established authority . . . that a mere request to loosen handcuffs, without any complaint of pain or proof of injury, . . . is sufficient to establish excessive force." (Reply at 8.) Defendant misrepresents Plaintiff's excessive force claim, as it involves more than a "mere request to loosen handcuffs" (Id.) -- Plaintiff challenges *the entire process* by which Defendant Nichols arrested him (See McGuigan Declaration ¶¶ 26-30). Plaintiff asserts Deputy Nichols "shoved [him] against the wall and applied handcuffs to [his] wrists." (McGuigan Declaration ¶ 28.) He further claims Defendant "tightened the handcuffs until they caused pain and discomfort." (Id. ¶ 29.) Due to the "tightness of the handcuffs and the odd angle of [his] physical position [in the police vehicle]," Plaintiff claims he "suffered a pinched nerve in [his] neck" that "causes pain in [his] shoulder [and] headaches." (Id. ¶ 45.)

### a.  Clearly Established Law

Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances.  <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989).  To determine whether a specific use of force is reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  <u>Id.</u> at 396.  Relevant factors in this inquiry include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Id.</u>

Accordingly, when these events occurred, October 23, 2013, it was clearly established that an officer could only use reasonable force to effect an arrest.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).  Accordingly, Plaintiff has met his burden with respect to this first element.

### b.  Reasonable Conduct

Summary judgment based on qualified immunity is improper because there are material disputes as to (1) "[w]hether the handcuffs were actually too tight," and (2) whether Plaintiff was attempting to end the encounter.  <u>See</u> <u>Thompson v. Lake</u>, 607 Fed. Appx. 624, 625 (9th Cir. 2015).  Plaintiff claims Defendant Nichols "tightened the handcuffs until they caused pain and discomfort," (McGuigan Declaration ¶ 5), while Defendant Nichols claims he "double locked the cuffs, which prevents [them from] tightening" (Nichols Declaration ¶ 4).  Further, as stated above, the parties dispute whether Plaintiff attempted to end the encounter by retreating into his residence -- a factor the Ninth Circuit has found significant in determining whether the use of force was reasonable.  <u>See</u> <u>Meredith v. Erath</u>, 342 F.3d 1057, 1061 (9th Cir. 2003) (finding officer used excessive force while arresting the plaintiff, who "made no attempt to leave the . . . property").

As qualified immunity "depends on genuinely disputed issues of material fact," the Court DENIES Defendant's claim and "submit[s] the fact-related issues to the jury."  <u>See</u> <u>Ortega</u>, 146 F.3d at 1154.

### 3.    Unlawful Search

Plaintiff claims he "saw what appeared to be the silhouettes of people moving . . . inside" his house while he was seated "in the back of [Defendant] Nichols's patrol car." (McGuigan Declaration ¶ 38.)  As Defendant Nichols "repeatedly told [him] . . . he was going to enter and search [his] house," Plaintiff "believed . . . deputy sheriffs were present inside [his] residence at that time." (Id. ¶ 39.)

#### a.    Clearly Established Law

It is clearly established that officers may not enter a residence "without a search warrant to execute an arrest warrant upon a guest in the residence, absent exigent circumstances" or consent.  See Perez v. Simmons, 884 F.2d 1136, 1142 (9th Cir. 1988) (citing Steagald v. U.S., 451 U.S. 204, 221 (1981)); Steagald, 451 U.S. at 216.

#### b.    Reasonable Conduct

A material dispute of fact exists as to whether Defendant Nichols and other officers searched Plaintiff's residence.  Defendant Nichols states that "[a]t no time did any other Sheriff's officer, including [him], enter [Plaintiff's] house." (Nichols Declaration ¶ 9.)  Plaintiff disputes this directly, stating he saw what appeared to be officers searching his house. (McGuigan Declaration ¶¶ 38-39.)  Plaintiff also emphasizes -- and Defendant Nichols concedes -- that Defendant Nichols asked Plaintiff repeatedly if he could search Plaintiff's residence. (Id. ¶ 39; Nichols Declaration ¶ 3.)

Plaintiff's only evidence that a search took place is his vague statement he saw "silhouettes of people moving . . . inside" his residence. (McGuigan Declaration ¶ 38.)  As such a statement is "uncorroborated and self-serving," it is insufficient to "create a triable issue of fact."  See F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) (citations omitted) (internal quotation marks omitted).  Further, Plaintiff has failed to address in his Opposition this sheer lack of evidence with respect to his unlawful search claim.  Accordingly, the Court finds Deputy Nichols is entitled to qualified immunity on this claim.

### B.    Supervisory Liability

Defendants Schaefer and Mulligan claim they cannot be held liable for Deputy Nichols's actions because their "involvement came only after [Plaintiff] had already been detained and arrested." (Motion at 16.) Plaintiff contends Sergeant Schaefer is liable because he spoke with Deputy Nichols shortly after Plaintiff's arrest and "knowingly refused to terminate a series of acts by [D]eputy Nichols that inflicted and prolonged an unlawful detention, use of excessive force, and malicious prosecution upon [Plaintiff]." (Opp'n at 22.) Plaintiff also holds Sergeant Mulligan liable because he approved Defendant Nichols's crime report, which included information regarding Plaintiff's alleged unlawful arrest. (Opp'n at 22-23.) By forwarding the report to the San Bernardino District Attorney's Office, Sergeant Mulligan initiated the malicious prosecution against Plaintiff. (See Opp'n at 23.)

An individual defendant cannot be held liable under Section 1983 without a showing of individual participation in the unlawful conduct. See Jones v. Williams, 297 F.3d 930, 934-935 (9th Cir. 2002) ("allowing the jury to find individual officers liable when there is no evidence to link them to specific actions would have been erroneous as a matter of law."). "To prevail on a theory of supervisory liability, the plaintiff must establish that the defendant either: 'personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" Bradberry v. Nev. Dep't of Corrs., No. 3:11-CV-00668-RCJ-VPC, 2013 WL 4702953, at *15 (Aug. 30, 2013) (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

The Court previously held Defendant Nichols is entitled to immunity on Plaintiff's unlawful search claim and that Defendants failed entirely to address Plaintiff's malicious prosecution claims. Further, Defendants Schaefer and Mulligan cannot be held liable for Plaintiff's unlawful search claim because Plaintiff has failed to submit evidence that a search occurred. Accordingly, the Court will only address whether Sergeant Schaefer is liable for Plaintiff's claims of unlawful detention and excessive force.

Plaintiff submits no evidence creating a genuine dispute of material fact that Sergeant Schaefer is liable for Plaintiff's alleged unlawful detention or Deputy Nichols's alleged use of excessive force.  It is undisputed that Deputy Nichols had already arrested Plaintiff when Deputy Nichols spoke to Sergeant Schaefer over the telephone.  (See McGuigan Declaration ¶¶ 27, 43; Nichols Declaration ¶¶ 4-6.) Accordingly, the Sergeant could not have "personally participated" in the alleged violations against Plaintiff.  See Bradberry, 2013 WL 4702953, at *15.  There is also no evidence he knew of the violations and failed to prevent them from happening. See id.  Even if he became aware of them over the telephone or when he came on the scene, the harm had "already occurred," and he could not have done anything to "prevent[] [the arrest or] the application of force in the first place."  See id.  Finally, Plaintiff submits no evidence Sergeant Schaefer employed policies approving unlawful detentions or the use of excessive force.  In his deposition, Sergeant Schaefer states he approved of Plaintiff's arrest "[b]ased on the facts given to [him] by Deputy Nichols."  (Schaefer Deposition 15:17-20.)  He also stated the San Bernardino County Sherriff's Department trains its officers that "a person can violate [Section 148] for failing to identify [himself] to a peace officer."  (Id. 17:10-17.)  The Court previously found in this Order it is unclear whether such an arrest violates the Fourth Amendment.  Even if it did, however, the Court refuses to find Sergeant Schaefer implemented a *policy* of approving unlawful detentions based on a single arrest.  The fact that Defendant Nichols released Plaintiff with a citation for violating Section 148 also demonstrates Sergeant Schaefer did not employ such a policy.

Accordingly, the Court GRANTS summary judgment on Plaintiff's excessive force and unlawful detention claims as to Defendant Schaefer.

## C.   <u>Monell</u> Liability

Plaintiff alleges Defendant County violated his constitutional rights when it failed to train its officers adequately and employed policies approving unlawful searches, unlawful detentions, and excessive force.  (See Complaint ¶¶ 94, 98, 104.) Defendant County claims it employed no such policies and that Plaintiff cannot establish his <u>Monell</u> claims on the current record.  (Motion at 16-19.)

In <u>Monell</u>, the Supreme Court held that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Monell</u>, 436 U.S. 690-91 (municipality cannot be held liable under section 1983 "solely because it employs a tortfeasor"). Thus, a municipal government entity may only be liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell</u>, 436 U.S. at 694.

"A [S]ection 1983 plaintiff may establish municipal liability" by "prov[ing] . . . a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992) (citations omitted) (internal quotation marks omitted). "Establishing an official custom requires more than proof of the single incident of which the plaintiff complains." <u>MacEachern v. City of Manhattan Beach</u>, 623 F. Supp. 2d 1092, 1106 (C.D. Cal. 2009) (citing <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)). "[T]o prove a custom, . . . Plaintiff must present evidence, that his injury resulted from a permanent and well-settled practice." <u>Id.</u> (citations omitted) (internal quotation marks omitted).

Plaintiff has failed to submit evidence demonstrating Defendant County employed unconstitutional policies.[9] Plaintiff's only evidence of a policy approving of unlawful arrests is Sergeant Schaefer's statement that he was trained "a person can violate [Section 148] for failing to identify [himself] to a peace officer" (Schaefer Deposition 15:17-20). A single instance of allegedly unlawful training, however, is insufficient to establish the longstanding policy required for <u>Monell</u> liability to

---

[9] Plaintiff does not address any of his <u>Monell</u> claims in the Opposition and fails to identify any evidence in the record that creates a genuine dispute as to whether Defendant County employed unlawful policies. The Court itself identified evidence that may be useful to Plaintiff but declines to scour the record any further to assert Plaintiff's claims for him. "[J]udges are not like pigs, hunting for truffles buried in briefs." <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003).

attach.  See MacEachern, 623 F. Supp. 2d at 1106.  Plaintiff has also failed to submit any evidence demonstrating Defendant County employed the other unconstitutional policies he alleges -- e.g., that the County allows officers to conduct unlawful searches or that it failed to train its officers adequately (Complaint ¶¶ 92, 102-106).  Even if an unlawful search occurred here, a single instance would again be insufficient to demonstrate a longstanding practice.  Plaintiff has also failed entirely to present evidence regarding the "specific inadequacies of [Defendant County's] training program[s]."  See MacEachern, 623 F. Supp. 2d at 1107.  Accordingly, the Court GRANTS summary judgment on Plaintiff's sixth, seventh, and eighth claims as to Defendant County.

## VI.   CONCLUSION

For the reasons stated above, the Court DENIES the Motion as to Plaintiff's unlawful seizure and excessive force claims with respect to Deputy Nichols.  It also DENIES the Motion with respect to Plaintiff's malicious prosecution claims against Defendants Nichols, Schaefer, and Mulligan.  The Court GRANTS the Motion in all other respects.

**IT IS SO ORDERED.**

Dated:    3/25/16                          _____
                                          Virginia A. Phillips
                                          United States District Judge

22